**John C. GIVENS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11724.**

District of Columbia Court of Appeals.

Argued Oct. 12, 1977.

Decided April 5, 1978.

---

Howard J. Schwartz, Washington, D. C., appointed by this court, for appellant.

Edward D. Ross, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on brief for appellee.

Before KERN, YEAGLEY and MACK, Associate Judges.

MACK, Associate Judge:

Appellant John Givens was charged with second-degree murder while armed (D.C. Code 1973, §§ 22–2401, –3203) and second-degree murder (D.C.Code 1973, § 22–2401), and was found guilty of the lesser-included offenses of manslaughter while armed (D.C. Code 1973, §§ 22–2401, –3202) and manslaughter (D.C.Code 1973, § 22–2401). On appeal, he contends that the government's closing argument to the jury concerning the significance of a witness' absence at trial was improper and prejudicial. We agree and reverse.

## I.

The evidence in this case showed that appellant killed Waverly Anthony in the course of a fight which took place in a private bathroom. At trial, appellant did not deny having killed decedent, but argued that he did so in self-defense.

The missing witness alluded to by the government was one Lawrence Brown. At a preliminary hearing, an officer was called by the government and testified that he had interviewed Lawrence Brown, that Brown had been an eyewitness to the altercation, and that according to Brown, appellant "began swinging at the deceased." The judge who presided at this preliminary hearing was not the same one that sat during trial, and there is no indication that the trial judge read the transcript of the earlier hearing. Nor did the jury know of the officer's pretrial testimony regarding the interview with Brown.

At trial, the government did not call Lawrence Brown to the stand, and none of the government's witnesses specifically placed Brown in the bathroom at the time of the altercation.

Prior to trial, an investigator acting on behalf of the defense also spoke to Lawrence Brown and obtained a written statement from him. In this statement, Brown admitted that he was present in the bathroom at the time the altercation began, but claimed that he "did not know who threw the first punch." Again, although this statement is part of the record, there is no indication that the trial judge was aware of it. Nor did the jury have any information in this regard.

At trial, appellant took the stand and testified in his own behalf. On direct examination, counsel for the defense asked appellant whether anyone had been in the bathroom at the time of the fight, and appellant replied that Lawrence Brown had been present. On cross-examination, the government questioned appellant as follows:

Q. And you say this Lawrence Brown was in [the bathroom]?
A. Yes, he was.
Q. Is he a friend of yours?
A. Yes, he is.
Q. Do you know him?
A. Yes, I do.
Q. Do you see him very often?
A. Yes, I do.

Q. Once a day? Couple times a day? Once or twice a week?

A. I see him once a day.

Q. You see him about once a day. Okay.

After the completion of the trial, the government and the defense respectively made closing arguments, but then the government was permitted to make a final rebuttal argument. Towards the end of this rebuttal, the prosecutor urged:

[PROSECUTOR]: Now, ladies and gentlemen, one point I suggest to you. When the defendant says we don't know what happened in the bathroom, there wasn't anybody there. Well, there was one person there, wasn't there. Howard Brown (sic). Right? Howard Brown was there when, apparently, according to the defendant, the decedent attacked him. Howard Brown was on the steps.

[DEFENSE]: Lawrence Brown.

[PROSECUTOR]: Lawrence Brown was on the steps. . . . Lawrence Brown is a friend of the defendant. Lawrence Brown is seen by the defendant, from the defendant's own words, every day. A friend of his.

Where is Lawrence Brown?

[DEFENSE]: I object. The Government could have called Lawrence Brown just as easily as the defense.

THE COURT: Objection is overruled.

[PROSECUTOR]: Ladies and gentlemen, the Government put on its witnesses. The Government told you what its witnesses were going to show. It was the defendant who told you Lawrence Brown was in that bathroom at the time. According to him, the decedent hit him first.

Lawrence Brown is his friend. Lawrence Brown is seen by him every day. Why isn't he here? Why didn't the defendant bring him down here to tell you what the defendant said happened really happened?

He could have done that.

## II.

When a party who would naturally be expected to call a witness fails to do so, an inference may arise that the witness was not called because his testimony would have been unfavorable to that party. In some respects, this inference is like any other inference which the jury can draw from evidence adduced at trial. The missing witness inference, however, differs from other inferences, in that it is based not on evidence, but on non-evidence, and the circumstances bearing on the import of this non-evidence are unlikely to come out at trial. That is, although there may be good explanation why a witness was not called, more often than not, the explanation will not be brought to the jury's attention.

In spite of the fact, however, that the question of why a witness was not called is seldom explored at trial—or perhaps because of that fact—the missing witness inference is often urged during summation, when proof relating to the witness' absence can no longer be offered. In such cases, the missing witness argument can be extremely misleading. For example, in the seminal case in this area, *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1893), the prosecutor misleadingly argued to the jury that the defendant's wife was a missing witness who could have appeared at trial and testified for the defense, when, in, fact, under applicable law the defendant's wife was not competent to testify in his favor.

To prevent such abuse of the missing witness inference, the rule evolved that no comment should be permitted with respect to a party's failure to call a witness, unless (1) the witness was peculiarly within the party's power to produce, and (2) the witness was one whose testimony would be likely to elucidate the transaction. *Wynn v. United States,* 130 U.S.App.D.C. 60, 64–65, 397 F.2d 621, 625–26 (1967); *Pennewell v. United States,* 122 U.S.App.D.C. 332, 333, 353 F.2d 870, 871 (1965). *See also Graves v. United States, supra.* The purpose of this rule, simply stated, is to prevent misleading argument based on half-truths.

## III.

Despite these requirements, the missing witness argument continued to prove troublesome. One case in which an attempt was made to grope with the problem is *Bradley v. United States,* 136 U.S.App.D.C. 339, 420 F.2d 181 (1969). There, the prosecutor improperly commented on a witness' absence, although significant information regarding the witness' absence was unknown to the jury. In reversing the United States Court of Appeals stated that a possible remedy for the improper comment could have been "a forthright instruction advising the jury of the uncontested fact[s] . . . unavailable in evidence as such." *Id.* at 345, 420 F.2d at 187.

The unusual remedy proposed by the court in *Bradley* might have been feasible in that case, where the relevant circumstances bearing on the witness' absence could be accounted for simply and concisely. Where, however, evidence relevant to the missing witness question is subject to dispute or cannot be so succinctly summarized, this remedy would not be appropriate. A far more effective solution is the preventative approach taken by the same court in *Gass v. United States,* 135 U.S.App.D.C. 11, 416 F.2d 767 (1969).

In that case, the prosecutor commented on the defense's failure to call eight witnesses who could have corroborated the defendant's alibi. The comment was clearly improper with respect to any of the eight witnesses whom the defense might have been powerless to produce at trial. Unfortunately, there was no way for the Court of Appeals to determine which, if any, of the eight witnesses fell into this category. In order to fill this informational gap, the court ruled:

. . . that for the future when counsel, either for the prosecution or the defense, intends to argue to the jury for an inference to be derived from the absence

of a witness, an advance ruling from the trial court should be sought and obtained. [*Id.* at 19, 416 F.2d at 775 (footnote omitted).]

## IV.

In the instant case, the government conceded, implicitly in its briefs and explicitly at oral argument, that it violated the *Gass* rule by failing to seek an advance ruling on the permissibility of the missing witness argument. The government, however, argues that the missing witness argument was appropriate and that, therefore, the failure to obtain a *Gass* ruling was harmless.

It is certainly true that if we were to judge solely on the basis of the evidence before the jury, we would have to hold that Brown was peculiarly available to appellant. *See United States v. Young,* 150 U.S. App.D.C. 98, 106, 463 F.2d 934, 942 (1972). Moreover, we would be inclined to agree that Brown, as an eyewitness, could be expected to have testimony to offer which would elucidate the question of self-defense.

■ But the validity of the missing witness inference cannot be tested solely on the basis of evidence before the jury. For the very reason why the initial inquiry regarding availability and elucidation is put in the hands of the judge instead of the jury, is that the jury is unlikely to have before it the necessary information with which to make a determination of those questions. In this case, appellant was never given an opportunity, as required by *Gass,* to prove to the trial court that the evidence before the jury relating to Lawrence Brown's absence was incomplete and misleading.* Hence there was error.

Nor is it clear that the error was harmless. See *Kotteakos v. United States,* 328

* There is, however, documentary proof in the record on appeal which suggests, at the least, that (1) Brown may have been both physically and practically as available to the government as he was to appellant; and (2) Brown may not have had anything elucidating to say on the

question of self-defense. We think then, that the missing witness argument was improper here for precisely the reason that it was improper in *Graves, Bradley,* and *Gass,* namely that it presented to the jury a misleading half-truth.

**28**

U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The government does not even contend, in this connection, that the evidence against appellant was strong. For although there was abundant proof that appellant killed the deceased, the proof relating to the issue of self-defense was entirely circumstantial and hardly overwhelming.

The government does, however, claim that for several reasons the jury is unlikely to have accorded much weight to the prosecutor's comments. Firstly, the government points out that an improper missing witness argument by a party is less prejudicial than an improper missing witness instruction from the court, and in this case there was no erroneous instruction. *See United States v. Young, supra,* 150 U.S.App.D.C. at 107, 463 F.2d at 943. Secondly, the government suggests that defense counsel "by objecting in the manner he did, made his point that the government [too] could have called Brown as a witness." Both these contentions, however, are substantially undermined by the fact that the trial court erroneously overruled the defense's objection. This action of the court inevitably had the effect of enhancing the government's position and weakening that of the defense. The government's final point in this regard is that the prosecutor's comment was relatively brief. We disagree.

Under the circumstances of this case, then, we think the jury may well have been influenced by the prosecutor's improper argument.

*Reversed and remanded.*