Phillip P. DYSON, Appellant,

v.

UNITED STATES, Appellee.

No. 79–766.

District of Columbia Court of Appeals.

Argued April 2, 1980.

Decided July 14, 1980.

---

John C. Hayes, Jr., Washington, D. C., appointed by the court, for appellant.

Martin J. Linsky, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

MACK, Associate Judge:

 After a jury trial, appellant was convicted of second-degree burglary (D.C.Code 1973, § 22–1801) and destruction of private property (D.C.Code 1973, § 22–403). On appeal, he raises one principal issue: whether comments by the prosecutor during rebuttal argument constituted such prejudicial misconduct as to require a new trial.[1] We find such comments to be improper. Since we are unable to say that the prosecutor's conduct did not substantially sway the judgment of the jury, we reverse.

The government's evidence showed that on the night of August 18, 1978, at approximately 12:30 a. m., a Metropolitan police officer was dispatched to the Washington Wholesale Drug Exchange because its silent burglar alarm had been activated. Upon arrival, the officer directed his spotlight on the outer entrance to the warehouse. There he saw a youth (H.)[2] standing partially inside the doorway. The officer testified that the youth began running, peeled off a pair of gloves he was wearing and tossed them behind a dumpster. Next appellant exited the doorway. The officer testified that he too began running. Both parties were arrested and appellant identified himself as one "James Russell." The officer retrieved the gloves from behind the dumpster and seized a sledge hammer which was lying approximately ten feet from the entrance. A police fingerprint analyst arrived on the scene but was unable to find any prints in the doorway area.

The president of the drug corporation testified that the silent alarm could be triggered either by opening or severely jarring the door. He stated that the lower panel of the door had been damaged. None of the warehouse inventory had been stolen.

Appellant and H. testified for the defense. Both acknowledged being at the warehouse but explained that they had seen the door standing open and became curious. The officer arrived just as they began peering into the doorway. Both witnesses denied fleeing when the police arrived. They also denied any prior relationship; in fact, H. stated that he only recognized appellant by sight. H. testified that he was standing on a street corner near the warehouse when appellant approached him, apparently having noticed the open door, and they walked over to the warehouse. Appellant testified that he was en route home but he stopped in the warehouse area at a car wash to "relieve" himself. At that time, he saw the open door and the youth standing on the corner.[3] He identified himself as "Russell" because that was a name he used at his job. The remainder of appellant's testimony corroborated H.'s testimony.

At the close of the evidence both sides addressed the jury in closing arguments. It is at this point in the trial, appellant contends, that reversible error occurred. He argues that certain comments made by the prosecutor during rebuttal argument constituted misconduct and substantially prejudiced the jury, thereby infecting the verdict.[4] We agree. We think the fact that the case rested entirely on the credibility of witnesses, coupled with the magnitude of the numerous instances of prosecutorial impropriety, constitute grounds for reversal.

I

 It is beyond dispute that the government may prosecute vigorously and zealously. Yet all attorneys are presumed to know

---

1. In addition, appellant alleges he was denied his Sixth Amendment right to a speedy trial. This claim is frivolous. We find nothing in the record which approaches the spectre of a speedy trial violation. More than a showing of mere delay is necessary to support such a claim. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Bowman v. United States*, D.C.App., 385 A.2d 28 (1978).

2. H. was tried in a juvenile proceeding.

3. On rebuttal the arresting officer testified that he saw a truck parked near the entrance which obstructed the view of the door from appellant's vantage point.

4. Appellant's motion for a mistrial following the argument was denied.

the rules of the court and they are expected to abide by them. We remind that a prosecuting attorney plays a special role in our judicial system.

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. [*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).]

Appellant points to four instances where the prosecutor indulged in transgressions constituting grounds for reversal.

■ First, some of the challenged remarks express the personal opinion of the prosecutor as to the veracity of the witnesses. The prosecutor stated (with respect to both defense witnesses):

> He lied to you, ladies and gentlemen. Why did he do that? Why did he make that story up?
>
> * * * * * *
>
> So why is he lying to you? It's just like Johnny lying about not delivering the newspapers. Johnny would lie, and that's because he took the snow shovel and tried to put it off on to somebody else.
>
> * * * * * *
>
> When the defense put on its case, it was filled with falsehood, not a grain of truth in this defense, ladies and gentlemen.
>
> * * * * * *
>
> We are not basing our argument simply on the fact that he was there, as Mr. Lieber said, but he was there and he lies about where he was . . . .

We have admonished lawyers to eschew personal opinions in the course of arguments to juries because this can divert jurors from their role.[5] *See, e. g., Bates v. United States*, D.C.App., 403 A.2d 1159 (1979); *Jenkins v. United States*, D.C.App., 374 A.2d 581, *cert. denied*, 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977); *Villacres v. United States*, D.C.App., 357 A.2d 423 (1976); *Hyman v. United States*, D.C.App., 342 A.2d 43 (1975). It is for the jury to decide whether a witness is truthful and an attorney may not inject personal evaluations and opinions as to a witness' veracity. Adherence to this constriction is vitally important when, as here, the veracity of the defense witnesses determines the ultimate issue of guilt or innocence. Thus here testimony by the defense witnesses conflicted with the government's theory that they damaged the door and broke into the drug warehouse. Appellant's testimony is a "lie" only if the jury accepts the government's version of the incident based upon an evaluation of the evidence before it. The prosecutor's comments provided imbalance.

In like vein, the prosecutor attacked the youth's version as incredible and he sought to guide the jury through an evaluation of the youth's demeanor while he was on the witness stand, stating:

> [The youth's] testimony is pretty incredible when you think of it.
>
> * * * * * *
>
> Why did it take him so long to answer?— because he was making the testimony up while he was sitting here.

■ Characterizing testimony as incredible is an accepted and proper form of comment on contradictory testimony. But, the prosecutor exceeded the bounds of permissible comment by invading the province of the jury's responsibility to assess the demeanor of witnesses when he characterized the witness' pause as an opportunity to fabricate.

---

5. Canon 7 of the Code on Professional Responsibility, as amended by this court, (DR 7–106(C)(4)) provides that: [A] lawyer shall not . . . assert his personal opinion as to the justness of a cause, as to the credibility of a witness, . . . or as to the guilt or innocence of an accused . . . ."

Even more troubling was the prosecutor's suggestion, over objection, that appellant's presence during the trial facilitated his ability to fabricate his testimony. He stated:

> And, you must remember, Mr. Dyson heard all the testimony, as he was the last one to testify . . . .

> \* \* \* \* \* \*

> He listened to what everyone said and then he gets up and tells his story.

We have construed such an argument as an apparent attempt by the prosecutor to have the jury draw adverse inferences from appellant's exercise of his constitutional right to confront witnesses. We have repeatedly expressed disapproval of such tactics. *Jenkins v. United States, supra* at 584; *Villacres v. United States, supra* at 426 n. 4; *Hyman v. United States, supra* at 45. *See also United States v. Wright,* 160 U.S.App.D.C. 57, 489 F.2d 1181 (1973).

Finally, most troubling was the prosecutor's comment on the failure of appellant to call certain witnesses.

> He said he was at the fire with three friends that he knew and still knows them and knows where they are. Did you hear from those three friends? You did not. Why weren't they here to say, "Yeah, I was at the fire with him." Where are those friends? He could have called those witnesses to corroborate his story, but you didn't hear from any of those people, did you? They are silent.

As to missing witnesses, the rule is well established that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Conyers v. United States,* D.C.App., 309 A.2d 309, 312 (1973), *citing Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed.

1021 (1893). However, absent a finding by the court as to the conditions creating a foundation for the presumption, comment by counsel (or instruction by the court) as to a missing witness is inappropriate and prohibited. *Dent v. United States,* D.C.App., 404 A.2d 165 (1979); *Shelton v. United States,* D.C.App., 388 A.2d 859 (1978).[6]

In the instant case, the conditions are lacking. There is nothing in the record to indicate that the three witnesses were unavailable to the prosecutor, thereby being peculiarly within the power of appellant to produce. No presumption arises from the failure of one party to call a witness if that witness is equally available to both parties. Moreover, appellant's testimony was that he was with these friends earlier on the night of the incident observing a fire some one to two blocks from the warehouse. At most, their testimony could only have corroborated his testimony that he was with them at that time. It would have shed no light on whether appellant did or did not break into the warehouse later that evening. Thus, the prosecutor's comments were improper as they permitted the jury to draw the erroneous inference that the missing witnesses' testimony would elucidate the transaction. Finally, the prosecutor failed to obtain an advance ruling from the trial court on this issue. We have held that counsel must seek and obtain an affirmative ruling before arguing to the jury that it may draw inference from the absence of a witness. *Givens v. United States,* D.C.App., 385 A.2d 24, 27 (1978), *citing Gass v. United States,* 135 U.S.App. D.C. 11, 416 F.2d 767 (1969). *See Cooper v. United States,* D.C.App., 415 A.2d 528 (1980); *Dent v. United States, supra.*

We conclude that the challenged comments were highly improper and representative of the kind of prosecutorial misconduct our cases condemn.[7]

---

**6.** *See also Conyers v. United States,* D.C.App., 237 A.2d 838 (1968); *Wynn v. United States,* 130 U.S.App.D.C. 60, 397 F.2d 621 (1967).

**7.** *See, e. g., Bates v. United States, supra;* *Reed v. United States,* D.C.App., 403 A.2d 725

(1979); *Sellars v. United States,* D.C.App., 401 A.2d 974 (1979); *Middleton v. United States,* D.C.App., 401 A.2d 109 (1979); *Williams v. United States,* D.C.App., 379 A.2d 698 (1977); *Fernandez v. United States,* D.C.App., 375 A.2d 484 (1977); *Miles v. United States,* D.C.App.,

## II

■ When we are asked to review instances of prosecutorial misconduct, the alleged errors must rise to the level of "substantial prejudice" in order to justify reversal. *Dent v. United States, supra* at 172; *Garris v. United States*, D.C.App., 295 A.2d 510 (1972). The applicable test to determine whether such misconduct caused substantial prejudice is "whether we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error." *Gaither v. United States*, 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969) (footnotes omitted), *quoting Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). *See also Cooper v. United States, supra* ; *Bennett v. United States*, D.C.App., 375 A.2d 499, 504 (1977).

■ Here the government's case consisted entirely of circumstantial evidence. The relative strength of the evidence on the critical element of intent was weak. Appellant's fingerprints were not found at the scene; there were no eyewitnesses; he did not have in his possession either fruits of the crime, or implements of the crime such as the sledge hammer or the gloves. The matter for jury consideration consisted entirely of deciding whether to believe the police officer or the defense witnesses. The jury's assessment of the believability of either version was dispositive of its finding of guilt or innocence. Against this backdrop

and at the risk of distortion, the challenged prosecutorial comments were directed again and again at the veracity of the defense witnesses.

It is true that the trial judge in its general instructions told the jury that the arguments of counsel were not evidence and repeatedly reminded that the jurors were sole judges of the believability of the witnesses.[8] Even if such general instructions, however, were sufficient to mitigate the prejudice stemming from the prosecutor's characterizations of the defense witnesses as liars, the defense was still faced with the dangers inherent in the impermissible suggestions that the jury might draw adverse inferences from the absence of evidence and the presence of the defendant.

We are concerned by the frequency with which violations of standards of permissible argument occur. On numerous occasions we have been asked to review instances of such misconduct. In most instances we have held that while the conduct of the prosecutor was improper, we were unable to say, in view of the weight of the evidence against the defendant, that the conduct swayed the judgment of the jury. This case (like that of *Dent, supra*) is different. The evidence against appellant was not particularly strong; the quantum and nature of prosecutorial impropriety was such as to prevent us from saying, with any conviction, that the jury was not prejudiced. Appellant is entitled to a new trial. Accordingly, the judgment is reversed and the cause remanded.

*So ordered.*

---

374 A.2d 278 (1977); *Jenkins v. United States, supra* ; *Davis v. United States*, D.C.App., 367 A.2d 1254 (1976); *Villacres v. United States, supra* ; *Hyman v. United States, supra* ; *Medina v. United States*, D.C.App., 315 A.2d 169 (1974); *Garris v. United States*, D.C.App., 295 A.2d 510 (1972). *See also United States v. Wright, supra* ; *United States v. Jones*, 157 U.S.App.D.C. 158, 482 F.2d 747 (1973); *Gaither v. United States, supra* ; *Gibson v. United States*, 131 U.S.App.D.C. 163, 403 F.2d 569 (1968); *Harris v. United States*, 131 U.S.App. D.C. 105, 402 F.2d 656 (1968).

**8.** The trial court's instruction included: "Now, the statements and arguments of the attorneys in their closing arguments to you are not evidence in the case. Rather, they are attempts by the attorneys to marshall what they think the evidence has shown and put their contentions before you. It is not relevant what an attorney thinks or believes. What is relevant is what you find has actually been proven in this case."