Leroy A. MOORE, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1220.

District of Columbia Court of Appeals.

Argued Jan. 11, 1983.

Decided March 25, 1983.

Barbara R. Miller, Public Defender Service, Washington, D.C., with whom Robert P. Mosteller, Public Defender Service, Washington, D.C., was on the brief, for appellant.

Mary A. McLaughlin, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, and John R. Fisher, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, MACK and PRYOR, Associate Judges.

KELLY, Associate Judge:

This appeal of a conviction for robbery,[1] presents the issue of whether the arresting police officer inadequately advised appellant of his *Miranda*[2] rights, thereby rendering inadmissible during the government's case-in-chief his inculpatory statement made in response to questioning by a second police officer shortly following his arrest. We conclude that the warnings were indeed inadequate and accordingly reverse appellant's conviction.

Around lunchtime on April 5, 1979, Special Police Officer Harold Robinson heard screams coming from the stationery department at Woodward & Lothrop, a store located on F Street, Northwest, in the District of Columbia. On duty in a neighboring department, approximately twenty yards away, Officer Robinson looked in the direction of the screams and saw a man "tussling" with a cashier. He immediately ran to provide assistance. From an estimated ten yards away, he saw the man's hand in the cash register drawer. As he reached the cash register, the man turned

---

1. D.C.Code § 22–2901 (1973) [recodified as D.C.Code § 22–2901 (1981)].

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

and attempted to flee, with dollar bills crumpled in his hand. Robinson grabbed and wrestled the man to the floor, paper money falling from his hand. At trial, the officer identified the man as appellant.

Metropolitan Police Officers Alfred Gurley and John Hawkins were present in Woodward & Lothrop at the time and responded to a report of a robbery in progress. When they arrived at the stationery department, they saw the two men grappling on the floor. After subduing appellant and placing him in handcuffs, Officer Hawkins informed him from memory of his constitutional rights. Shortly thereafter, as the officers were escorting him to the store security office, appellant responded to a question from Officer Gurley and made the inculpatory statement at issue here.

Appellant's counsel learned for the first time that appellant allegedly had made an inculpatory statement through the testimony of Officer Gurley during the government's case-in-chief. He immediately moved to strike the officer's testimony because the government had failed to disclose the inculpatory statement during discovery and, in the alternative, for a mid-trial suppression hearing to determine whether the rights allegedly given to appellant were inadequate under *Miranda*. After hearing testimony from both police officers and from appellant, the court denied appellant's

motion, finding no bad faith on the part of the government.

Appellant presented his defense, calling both police officers to the stand. Appellant also testified and admitted that he was present in the department store to price some Tigress cologne for his girlfriend. He denied ever placing his hand near the cash register and said he had witnessed a man with stubble on his face reach in and grab money, after which dollar bills flew in the air. As he bent down to pick up some of these bills, he was tackled by Special Officer Robinson. Throughout his testimony, appellant denied either committing or confessing to the robbery.

The government concedes that the questioning of appellant by Officer Gurley constituted "custodial interrogation" and that the *Miranda* protections applied.[3] Nevertheless, it argues that the testimony of the police officers at the mid-trial suppression hearing supported an implicit finding that appellant was fully advised of his rights which he subsequently waived in making his statement. Our role, therefore, is limited to reviewing the record to determine whether this finding was "plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (1981). *See In re C.P.,* 411 A.2d 643, 646 (D.C.), *vacated,* 449 U.S. 945, 101 S.Ct. 345, 66 L.Ed.2d 210 (1980), *on remand,* 439 A.2d 460 (D.C.1981).[4]

3. "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, . . . [h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona, supra,* 384 U.S. at 478–79, 86 S.Ct. at 1629.

4. Appellant does not contest the court's express finding that the government's failure to disclose the statement was not in bad faith. He does challenge the implicit finding that the *Miranda* warnings received by appellant were adequate. Without speculating why the court limited its express consideration to the first ground of counsel's clearly articulated two-fold

motion, we note that the testimony adduced at the hearing addressed with equal force the potential bad faith non-disclosure by the government of appellant's statement as it did the failure of the police officers to give appellant the complete *Miranda* warnings. *See* text *infra.* Contrary to the government's assertion, therefore, a remand to further develop the evidence regarding the substance of these warnings is unnecessary. Moreover, we reject the government's argument that neither they nor the trial judge received sufficient notice of the intended scope of the hearing requested by defense counsel. Counsel's unambiguous objection, by which he requested a hearing on his alternative motion to suppress, clearly exceeded the minimum which our cases require. *See Botts v. United States,* 310 A.2d 237, 243 (D.C. 1973); *accord Blair v. United States,* 130 U.S. App.D.C. 322, 326, 401 F.2d 387, 391 (1968).

Officer Gurley testified at the suppression hearing that he did not warn appellant of his rights before questioning him. Officer Hawkins testified that immediately following the arrest, while appellant was handcuffed on the department store floor, he informed him from memory of the litany of rights prescribed by *Miranda*. On direct examination, Officer Hawkins stated:

I didn't read from them. I memorized it, and advised him that he had been placed under arrest, and he didn't have to say anything, and advised him about having a lawyer present, and he can contact a lawyer, that he could answer questions.

On cross-examination, the following dialogue occurred:

Q: What did you say to him?

A: I advised Mr. Moore that he had been arrested for robbery/snatch at that point, and that he didn't have to say anything to anybody until he was contacted by a lawyer, and that he could answer questions without a lawyer present, and that he could answer questions and stop answering questions at any time. Any question that he felt like he didn't want to answer, that he could stop answering and contact a lawyer.

\* \* \* \* \* \*

Q: Is that all you told him?

A: At that point, yes.

■ This record demonstrates that the examination of Officer Hawkins, both on direct and cross, amply explored the substance of the warnings received by appellant and further that these warnings did not comply with the strictures of *Miranda*. Officer Hawkins informed appellant he was under arrest and that he had the right to remain silent; he failed to warn appellant that anything he said could be used against him in a court of law. Similarly, the officer informed appellant he could have a lawyer present; he failed to tell appellant that, if he could not afford an attorney, one would be appointed for him before any questioning if he so desired.[5] Accordingly, we hold that the implicit finding of the trial court that the warnings afforded appellant adequately complied with *Miranda* was "plainly wrong and without evidence to support it." D.C.Code § 17–305(a) (1981); *see In re C.P., supra.*

Appellant cites *Botts v. United States, supra* note 4, to support his claim for reversal. In *Botts,* we reversed the appellant's conviction for receiving stolen property, finding that the warnings administered to him after his arrest and before he made a statement which ultimately proved to be incriminating did not comport with the standards established by *Miranda;* hence, the admission of the statement in the government's case-in-chief was prejudicial. Our examination of the testimony of the arresting officer in *Botts* revealed that Botts "was not told that (1) anything he said could be used against him, or (2) that a lawyer would be provided for him if he could not afford one. . . . In fact the only warning clearly given was that appellant had a right to remain silent." *Id.* at 241.

\* \* \* \* \* \*

In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. . . . The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have

---

**5.** In this regard, the Court in *Miranda* commented:

The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. [384 U.S. at 469, 86 S.Ct. at 1625.]

■ We view *Botts* as controlling here.[6] Although in the case before us appellant was warned perhaps of a greater number of rights, the strength of the principle which underlay our reversal in *Botts* remains undiluted.[7] The strict prescription created by the Supreme Court in *Miranda* requires that a person undergoing custodial interrogation be informed of the entire litany of rights; anything less will render a subsequent statement inadmissible at trial during the government's case-in-chief.[8]

*Reversed and remanded for new trial.*

counsel present. [*Id.* at 473, 86 S.Ct. at 1627.]

6. The government suggests that the harmless constitutional error standard of *Chapman v. California,* 386 U.S. 18 (1976), should be applied to the admission of appellant's inculpatory statement taken in violation of *Miranda.* See *Brewster v. United States,* 271 A.2d 409, 412 (D.C.1970) (dicta); *United States v. Harris,* 140 U.S.App.D.C. 270, 279 n.21, 435 F.2d 74, 83 n.21 (1970) (dicta), *cert. denied,* 402 U.S. 986 (1971). Assuming without deciding the merits of the government's position, we do not believe that the error here was harmless beyond a reasonable doubt. *Chapman v. California, supra,* 386 U.S. at 24. Officer Gurley's testimony which related the inculpatory statement effectively undercut appellant's consistent denial, both before and during trial, of the commission of the offense, notwithstanding the prosecutor's attempts during summation to focus the jury's attention on other inculpatory evidence in the case. "An error in admitting [such] plainly relevant evidence which possibly influenced the jury adversely to [appellant] . . . cannot . . . be conceived of as harmless." *Id.,* at 23–24. *Accord Botts v. United States, supra,* note 4; *Dupont v. United States,* 259 A.2d 355 (D.C.1969); *Walker v. United States,* 250 A.2d 553 (D.C.1969).

7. Although subsequent decisions of the Supreme Court have clarified the meaning of *Miranda, see, e.g., California v. Prysock,* 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam) (strictures of *Miranda* are flexible as to form, rigid as to substance); *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) (request by a juvenile for his probation officer is not tantamount to a request for an attorney); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (statement taken in violation of *Miranda* may be used to impeach defendant, notwithstanding its inadmissibility in the government's case-in-chief), none has softened the strictness of its holding which requires "the suppression of trustworthy and highly probative evidence even though the confession might be voluntary under traditional Fifth Amendment analysis." *Fare v. Michael C., supra,* 442 U.S. at 718, 99 S.Ct. at 2568. *Accord In re C.P.D.,* 367 A.2d 133, 134 (D.C. 1976).

8. Accordingly, we do not address the issue whether appellant waived his rights. We note, nevertheless, that as appellant was not informed completely of his rights, any attempted waiver *a priori* would not satisfy the *Miranda* imposed standard of "knowingly and intelligently." See *Miranda v. Arizona, supra,* 384 U.S. at 475, 86 S.Ct. at 1628.