**Neal D. SWEAT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 85–1470.**

District of Columbia Court of Appeals.

Argued March 1, 1988.
Decided April 15, 1988.

---

**2.** The trial judge stated that she would do so if the government consented; the government ob-   jected.

Joanne Wallace, Public Defender Service, with whom James Klein, Jennifer P. Lyman and Paul A. Leder, Public Defender Service, Washington, D.C., were on the brief, for appellant.

David Howard Saffern, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, Michael W. Farrell and Elizabeth Trosman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN, ROGERS and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Appellant Sweat was a disappointed applicant for a Small Business Administration ("SBA") loan. He engaged in a street altercation with Thomas Peniston, an SBA loan officer, and was convicted of simple assault. D.C. Code § 22–504 (1981). The only issue on appeal is whether certain prior statements by Peniston consistent with his trial testimony were properly allowed into evidence. We affirm.

## I.

The incident occurred in the late afternoon. That evening, Peniston telephoned Michael Dowd, his immediate supervisor at the SBA, concerning the incident. The police were not notified until the next day. The prior consistent statements at issue consisted of certain details of the telephone conversation between Peniston and Dowd.

Only Peniston and Sweat testified as to what happened in the confrontation between the two. Both were in general agreement that while Peniston was waiting on the street for his car pool, Sweat approached him and they began to exchange words concerning the rejected loan application.

Peniston's version of the assault itself was that at a certain point, Sweat said, "If I don't get my money, I'm coming after you personally," whereupon Peniston lost his composure and said to Sweat, "Motherfucker, if you come after me, I'll kill you" or words close to that effect. Sweat in response struck Peniston on the chin with his fist and thereafter kept attempting to hit Peniston although held at bay by him.

Sweat on the other hand testified that when Peniston lost his temper, he came at Sweat with his hand in his pocket, saying "Nigger, I'm gonna kill you, motherfucker." In response, Sweat moved to one side, grabbed Peniston's shoulder and threw him to the ground. He then walked away.

In his opening statement, Sweat's counsel himself made the first reference to Peniston's telephone call to Dowd and the delay in reporting the incident to the police. In cross-examination of Peniston, Sweat's counsel brought out the fact that Peniston had failed to testify on direct that he had called Sweat "motherfucker," suggesting that Peniston wanted to avoid mentioning that he had used such language. He then proceeded to question Peniston about the telephone call, asserting in effect that Peniston was "worried about the effect of your conduct on your job" and that Peniston feared that Sweat would file a complaint

with the SBA and "wanted to speak to Mr. Dowd before anyone else did about the incident." Peniston denied all these assertions, saying that he wanted to put Mr. Dowd on notice because he didn't know "what that man might be capable of." (Dowd himself had had a stormy interview with Sweat about the loan application several months previously.)

On redirect, government counsel attempted to establish that Peniston had not withheld anything from Dowd and had told him about all aspects of the incident. Defense counsel objected, saying that he had not questioned Peniston about the substance of the conversation with Dowd. The trial court overruled the objection, noting that defense counsel on cross-examination had attempted to show the jury that Peniston was trying to call Dowd to protect himself and that in essence Peniston's state of mind, his motive, in making the call and whether he had told Mr. Dowd all the things he said to Sweat had been put into issue. The substance of the conversation was relevant to these matters, the court ruled, and was not necessarily being introduced for the truth of the matters stated. Government counsel then simply elicited from Peniston that he had told Dowd the whole story and left nothing out.

The matter of the telephone call came up again when Dowd was called on rebuttal. First, he related details about his interview with Sweat. Then the prosecutor raised the telephone call with Peniston and defense counsel again objected. The trial court again ruled that, as defense counsel himself agreed, the defense had put into issue the reasons behind and the purposes of the telephone call (the defense in effect asserting that Peniston had called to cover himself, rather than to simply inform his superior) and that the substance of the conversation was therefore relevant. As it turned out, however, in the thirty lines of transcript describing the conversation, Dowd dealt only with the essentially undisputed events leading up to the ultimate words of confrontation and then quoted Peniston as telling Dowd that he had said to Sweat, "Motherfucker, you come after me personally and I will kill you." Dowd gave no details about what Peniston told him had occurred after those words were spoken, which was the heart of the disagreement between the two versions of the incident, apart from his general statement at the beginning of his testimony that Peniston had opened the conversation by saying that "I was attacked by Neal Sweat on the street tonight."

## II.

Sweat invokes the established rule in this jurisdiction governing the use of prior consistent statements of a witness, *Reed v. United States*, 452 A.2d 1173, 1180 (D.C. 1982), *cert. denied*, 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983):

As a general rule, prior statements consistent with a witness' trial testimony are inadmissible on the theory that mere repetition does not imply veracity. However, in *at least* two exceptional situations a witness' prior consistent statements may be introduced to rehabilitate: (1) where the witness has been impeached with a portion of a statement and the rest of the statement contains relevant information that could be used to meet the force of the impeachment, and (2) where there is a charge of recent fabrication. (Quotation marks and citations omitted; emphasis added.)

Sweat argues that Peniston was never impeached by any part of his statements to Dowd and that Peniston's motive to fabricate, concern for his job status, existed from the moment of the incident, and therefore neither exception applies.[1]

---

1. *See Sherer v. United States*, 470 A.2d 732, 740 (D.C.1983), *cert. denied*, 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984):

The rule barring the introduction of prior consistent statements is designed to prevent the jury from learning that a witness has given the same account out of court that he or she gave on the stand. The rationale for the rule is that a witness' having told the same story on more than one occasion has no bearing on the truth of the statement.

That is, it is based primarily "on the theory of irrelevancy." 3 J. WEINSTEIN & M. BERGER, EVIDENCE ¶ 607[08], at 115 (1987).

The government asserts that the situation presented here is a specialized application of the first exception. We agree.

There is not a great deal of case law actually applying the first exception. Although its existence has been stated and restated in a number of our decisions, the source of the rule in our jurisdiction is *Coltrane v. United States*, 135 U.S. App. D.C. 295, 418 F.2d 1131 (D.C.Cir.1969). In that case, a complainant had been impeached by defense counsel with selected portions of a statement he had given to the police. The court permitted the prosecution to rehabilitate the witness by permitting the jury to view the excerpts utilized on cross-examination in the context of the full statement. Such determinations of relevancy were held to be committed "primarily to the sound judgment of the trial judge." 135 U.S. App. D.C. at 304, 418 F.2d at 1140 (citation omitted).

The opinion referred to and relied upon the earlier case of *Affronti v. United States*, 145 F.2d 3 (8th Cir.1944), which applied the rule to a case where a narcotics investigator was impeached with portions of a prior report he had written. The court permitted use of other portions of the report to rehabilitate, even though some of these portions were clearly not admissible in their own right, in order to show that the differences between the report and the actual testimony were not as great as might otherwise have seemed to be the case.

An application of this principle by our court was upheld in *Sherer v. United States*, 470 A.2d 732 (D.C.1983), *cert. denied*, 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984). There, a prosecution witness was impeached with inconsistencies with his trial testimony contained in a statement given to the police. The inconsistencies concerned only details in the account. On redirect, the prosecution was permitted to question the detective who took the statement about its content, and eventually the entire statement was admitted into evidence. We observed that it was defendant, not the government, who first raised the issue of the statement to the police. We rejected the defense argument that the prosecution could only deal on redirect with the portions of the statement brought out on cross, observing that the government had the right to show that the prior statement as a whole was consistent with the trial testimony. *Id.* at 739–40.

■ We think the same general reasoning applies to the case before us. Here it was the defendant who broached implications of possible irregularities both in the content of and the purpose behind a prior account of the incident (ultimately shown to be consistent).[2] Defense counsel first raised in his opening statement the subject of the telephone call to Dowd. In his cross-examination of Peniston, he brought out the failure by Peniston on direct to say that Peniston had called Sweat a "motherfucker" and shortly thereafter turned to questioning Peniston about the call to Dowd and his purpose in doing so. Certainly an inference could have been drawn that Peniston was not fully candid in relating the incident to Dowd. In these circumstances, the prosecutor could quite properly be allowed to explore more fully the actual substance of the conversation itself.

Furthermore, the line of questioning by defense counsel squarely put into issue Peniston's purpose in making the call, a matter murky of discernment without knowledge of the conversation itself. We apply here the rationale underlying the exceptions to the normal rule, namely, that prior consistent statements are admissible where "they could be of clear help to the factfinder in determining whether the witness is truthful." *Coltrane v. United States, supra*, 135 U.S. App. D.C. at 304, 418 F.2d at 1140; *accord, Johnson v. United States*, 434 A.2d 415, 420–21 (D.C.1981). The admissibility of the substance of the conver-

---

**2.** This is plainly distinct from the pure case where a prior inconsistent statement is introduced to impeach a witness and the other party seeks to present a separate prior consistent statement in order to rehabilitate. *See, e.g., Reed v. United States, supra*, 452 A.2d at 1178–

80. Although jurisdictions are split on the point, we have declined to rule that use of a prior inconsistent statement to impeach opens the door to prior consistent statements generally. *See id.* at 1180 n. 7; *Scott v. United States*, 412 A.2d 364, 372–73 (D.C.1980).

sation here is also consistent with the basic principle that

> while the proponent of evidence offers it as leading to a desired conclusion, it is always open to the opponent to show that the inference desired to be drawn is not the correct or more probable one, and that some other inference than the one desired is equally or more probable, i.e., to show that some other explanation exists and thus to *explain away* the force of the evidential circumstance.

3A J. WIGMORE, EVIDENCE § 880, at 649 (Chadbourn rev.1970) (emphasis in original). *See also* McCORMICK ON EVIDENCE § 49, at 115 (E. Cleary 3d ed. 1984) ("when there has been evidence of impeaching facts the proponent may bring contradictory evidence asserting the untruth of the alleged impeaching facts"). Thus the rule barring the introduction of prior consistent statements does not bar those that are "logically relevant to explain the impeaching fact." McCORMICK, *supra*, § 49, at 116.

Although Peniston had earlier testified that he had told Dowd "everything," the questioning of Dowd to confirm Peniston's testimony was permissible since the testimony of the declarant as to prior statements "will usually be of less value than the testimony of other persons." 4 J. WIGMORE, EVIDENCE § 1132, at 296 (Chadbourn rev.1972). In this questioning of Dowd, defendant did not request the trial court to circumscribe the information brought out. Indeed, other than a passing reference to the fact that Peniston had said that Sweat attacked him, the information brought out by Dowd was mainly either innocuous or unfavorable to Peniston, particularly the threatening statement made by him to Sweat with the included expletive.

In sum, here, Peniston and Sweat presented conflicting versions of the assault. In attacking Peniston's version, Sweat asserted that Peniston had a motive to lie in order to preserve his job. But he did not stop there. He attempted to bolster his assertion by stressing the fact that Peniston's first report of the incident was not to the police but to his superior and, a jury might think, implying that Peniston was less than fully forthcoming in the account. In addition, he expressly questioned Peniston's motive and purpose in making the call. Once he did so, we think the door was opened to a sufficient explanation of the full circumstances surrounding the call, including the conversation itself. While of course the trial court has an obligation to limit introduction of the details of the prior consistent statement to those relevant to meet the issues raised on cross-examination, *Sherrod v. United States*, 478 A.2d 644, 661 (D.C.1984); *Musgrove v. United States*, 441 A.2d 980, 984–86 (D.C.1982),[3] we do not think he abused his discretion in admitting the details allowed into evidence here. *See Coltrane v. United States*, *supra*, 135 U.S.App.D.C. at 304, 418 F.2d at 1140 ("[r]elevance is a matter committed primarily to the sound judgment of the trial judge").

Accordingly, the judgment appealed from must be

*Affirmed.*

---

**3.** An instruction may also be sought limiting the use that the jury may make of the prior consistent statement. *See, e.g., Musgrove v. United States, supra,* 441 A.2d at 985 (trial court instructed jury that it could consider the statements only in evaluating the witness's credibility). No issue is raised on appeal about the absence of any such instruction here, and in any event it would not constitute plain error. *Johnson v. United States, supra,* 434 A.2d at 420 n. 4.