**Steven MITCHELL, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 85–615.**

District of Columbia Court of Appeals.

Argued Dec. 6, 1989.
Decided Jan. 26, 1990.

As Revised on Partial Grant of Rehearing;
Rehearing En Banc Denied
April 12, 1990.

Richard Greenlee, with whom, James
Klein, Public Defender Service, Washing-
ton, D.C. and Henderson Hill, Public De-

fender Service, were on the brief, for appellant.

Michael Volkov, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., were on the brief, for appellee.

Before ROGERS, Chief Judge, and NEWMAN, Associate Judge and PRYOR, Senior Judge.

ROGERS, Chief Judge:

Appellant, Steven Mitchell, appeals from his conviction by a jury of kidnapping while armed, D.C.Code §§ 22–2101, –3202 (1989), felony murder while armed (kidnapping while armed), id. §§ 22–2401, –3202, and first-degree murder while armed, id. §§ 22–2401, –3202, on the grounds that the government failed to prove the crime occurred in the District of Columbia and hence the trial court did not have jurisdiction, and the trial judge erred in denying a severance of his trial from the co-defendant's trial where the defenses conflicted and codefendant's counsel acted as a second prosecutor. He also seeks reversal on the ground of prosecutorial misconduct in closing arguments, improper use of prior consistent statements and of an out-of-court statement, and the denial of use of a prior statement of a defense witness. We affirm. We reach similar conclusions as to other errors; accordingly, we affirm.

## I.

On October 26, 1983, around 12:30 a.m., Deborah Fuqua visited appellant's home at 5344 C Street, S.E. According to the government's theory, appellant forced Fuqua to have sexual intercourse while she was in appellant's bedroom and then abducted her to a nearby wooded area where he killed her with a knife, and subsequently, with his friend Hair, the co-defendant, moved her body to Maryland. The government's evidence showed that appellant had been very anxious to get Fuqua to come over to his apartment and that after she arrived, appellant and Fuqua were in his bedroom until 3 or 4 a.m. Early that morning residents of the apartment house heard screaming, crying, and choking sounds coming from appellant's bedroom and appellant was seen struggling with Fuqua, holding his hand over her mouth, as they left the apartment building around 4 a.m. Fuqua did not return home that night, and on November 1, 1983, one of the shoes that she had been wearing was found in a field near 5340 C Street. Gov't Exhibit 24. After October 26, people noticed that appellant claimed to be exhausted and to feel sick, was hesitant to return to his apartment, generally acted nervous, and was "talking crazy," saying that he needed a pistol because of some problems with "dudes".

The government also presented evidence that appellant enlisted the assistance of his friend, Hair, in transporting Fuqua's body to Maryland. Appellant had stayed with friends for several days after October 26, 1983, and had repeatedly approached a friend, Samuel Jackson, about borrowing his car to take care of something "real heavy". On October 28, 1983, Hair borrowed a car from his cousin, Daniel Houser, while he was with appellant. Appellant returned to Jackson's house about 4 a.m. the following morning.

Fuqua's body was discovered about 11 miles from appellant's home on November 14, 1983. Hairs and fibers recovered from Houser's car, appellant's bedroom and Fuqua's clothing indicated Fuqua's body had been in the back of Houser's car. Fuqua died of stab wounds inflicted before her body was discovered and there was evidence that appellant kept a knife under his mattress.

Appellant was charged with kidnapping while armed, felony murder while armed based on the kidnapping, and first-degree murder while armed, while Hair was charged as an accessory after the fact of kidnapping while armed, of felony murder while armed, and of first-degree murder while armed, D.C.Code § 22–106 (1989). Appellant called two defense witnesses

who testified that they saw Fuqua' alive after October 26 when she came into a fast food restaurant where they worked, although one witness admitted on cross-examination that she was not sure of the date. Appellant testified that he had had sexual relations with Fuqua, but denied seeing her after she left his apartment early in the morning of October 26, 1983. Hair did not testify or present any evidence; on cross-examination of appellant, however, Hair's counsel suggested that appellant alone had moved Fuqua's body. The jury convicted appellant of all charges and acquitted Hair of all charges.

## II.

■ Appellant contends that the trial court lacked subject matter jurisdiction over the first-degree murder and felony murder charges, that the jury should have been instructed that it had to determine whether the fatal blow to Fuqua occurred in the District of Columbia, and that there was insufficient evidence that the fatal blow occurred in the District. At trial appellant's counsel advised the judge that the jurisdictional issue was a question of law properly resolved by the judge, however, and appellant is bound by the position that his counsel took at trial. *Jones v. United States,* 512 A.2d 253, 259 n. 8 (D.C.1986); *Byrd v. United States,* 502 A.2d 451, 452–53 (D.C.1985) (citing *Hackes v. Hackes,* 446 A.2d 396, 398 (D.C.1982)). In any event, we find no error.

■ Under D.C.Code § 11–923(b)(1) (1989), the jurisdiction of the Superior Court is limited to "any criminal case under law applicable exclusively to the District of Columbia." This limits jurisdiction to criminal violations taking place within the District of Columbia. *Mundine v. United States,* 431 A.2d 16, 17 (D.C.1981). The question of where an offense took place is "not one of fact for the jury." *Id.* at 18; *Adair v. United States,* 391 A.2d 288, 290 (D.C.1978).[1] Hence, the trial judge did not err in ruling that the jurisdictional question was for him to decide.

■ The question remains what burden of proof is required to show jurisdiction. Many states require proof beyond a reasonable doubt. Annotation, *Proving Venue, Territorial Jurisdiction,* 67 A.L.R.3d 988, 1004 (1975). Thus, for example, in *State v. Baldwin,* 305 A.2d 555 (Me.1973); Annotation, *supra,* 67 A.L.R.3d at 1004, the Supreme Court of Maine reasoned that a stringent standard of proof reflects the gravity of the effect of an erroneous jurisdictional determination upon the judicial process and upon the rights of defendants and, because jurisdiction can never be waived nor conferred by consent, would insure that when a court acts, it does so with authority and best avoid the risk that a defendant already tried might be tried in a second jurisdiction for the same offense where the first court was without jurisdiction. 305 A.2d at 559–60. In addition, the Maine court reasoned that much greater deference would be given to its court's decisions by other jurisdictions if Maine's jurisdiction were established by evidence beyond a reasonable doubt. *Id.* at 560–61. *See also State v. Jones,* 51 Md.App. 321, 339, 443 A.2d 967, 978 (1982); *State v. Batdorf,* 293 N.C. 486, 492, 238 S.E.2d 497, 502 (1977); *Conrad v. State,* 262 Ind. 446, 317 N.E.2d 789 (1974). The alternative view, that jurisdiction be proved by a preponderance of the evidence, has been adopted by courts without helpful explanation.[2] We find persuasive the rationale

---

1. To the extent that appellant relies on *Simms v. United States,* 101 U.S.App.D.C. 304, 248 F.2d 626, *cert. denied,* 355 U.S. 875, 78 S.Ct. 127, 2 L.Ed.2d 79 (1957) as holding it proper to submit to the jury a dispute over jurisdictional facts, *Adair* and *Mundine,* while not explicitly so stating, effectively overruled any such interpretation of *Simms.* Neither this court nor the United States Court of Appeals for the District of Columbia Circuit has cited *Simms* on this issue. Moreover, the appellate court in *Simms* was merely observing what had transpired in the trial court and its language on this issue does not constitute a holding. *See Thompson v. United States,* 546 A.2d 414, 423 n. 14 (D.C.1988) (citing *Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925)).

2. *See Cauley v. United States,* 355 F.2d 175 (5th Cir.), *cert. denied,* 384 U.S. 951, 86 S.Ct. 1572, 16 L.Ed.2d 548 (1966); *People v. Cavanaugh,* 44 Cal.2d 252, 282 P.2d 53 (1955), *cert. denied,* 350 U.S. 950, 76 S.Ct. 325, 100 L.Ed. 828 (1956).

underlying the rule that jurisdiction must be proved beyond a reasonable doubt. A jurisdictional determination involves the power of the court to try a defendant and adopting a stringent burden of proof minimizes the chance that a defendant will be tried here for a crime committed elsewhere and thereby increases the likelihood that greater deference will be given to our decisions by other jurisdictions.

■ Applying this rule in the instant case, we hold that there was sufficient evidence that elements of a continuing offense occurred in the District of Columbia. *Adair, supra,* 391 A.2d at 290. Fuqua was observed being forcibly taken by appellant from his apartment building in the District of Columbia towards a wooded area after being raped; her shoe was found in the woods behind appellant's apartment building; and blood and fibers found in Houser's car combined with the evidence of when appellant had access to the car provided strong circumstantial evidence that Fuqua had been transported from the District of Columbia into Maryland in Houser's car. Appellant made no affirmative showing to rebut the presumption that an offense was committed within the jurisdiction of the court in which the charge is filed. *Id.; James v. United States,* 478 A.2d 1083, 1086 (D.C.1984).

### III.

Appellant also contends that the trial judge erred in denying his motions for a mistrial and severance because of the conflicting defense arising from the posture of a second prosecutor assumed by the co-defendant's counsel.[3] The prejudice from Hair's defense, that only appellant moved Fuqua's body, was magnified, appellant argues, because Hair's counsel aligned himself with the prosecution and made improper and inflammatory remarks during closing argument, thereby "whipsaw[ing]" appellant between government and private

prosecutors. We find no abuse of discretion. *Tillman v. United States,* 519 A.2d 166, 169 (D.C.1986); *Banks v. United States,* 516 A.2d 524, 526 (D.C.1986); *Ready v. United States,* 445 A.2d 982, 986 (D.C.1982). *See Johnson v. United States,* 398 A.2d 354, 367 (D.C.1979) (nonreversible error is not an abuse of discretion).

In assessing whether to grant a motion to sever based on conflicting defenses, the trial judge must determine (1) whether the defenses are inherently conflicting and (2) if so, whether there was a danger that the jury unjustifiably would infer that this conflict alone demonstrated both were guilty. *Ready, supra,* 445 A.2d at 986–87; *see also Tillman v. United States, supra,* 519 A.2d at 171. In other words, the trial judge must determine "whether there would be available at trial enough independent evidence of appellant's guilt—beyond that required for the government to survive a motion for judgment of acquittal—so that the court reasonably could find, with substantial certainty, that the conflict in defenses alone would not sway the jury to find appellant guilty." *Ready, supra,* 445 A.2d at 987.

The government concedes, and we agree, that appellant and Hair presented conflicting defenses regarding who moved Fuqua's body. When Hair's counsel cross-examined appellant, he asked appellant to explain how Fuqua's body got into Houser's car, assuming that appellant was involved in moving Fuqua's body and reminding the jury about the blood and fibers in the back of Houser's car. He also asked appellant about lifting heavy objects at work and whether he could easily lift 116 pounds, Fuqua's body weight. Hair's counsel then directly implicated appellant, positing that he "in fact did borrow that car and you went and you found Fuqua's body and you put it in the back seat of his Mercury and her head was here and her feet were here and that you drove this car to the Baltimore–Washington Parkway and you pulled

---

**3.** To avoid undue prejudice, properly joined defendants may request a severance at any time under Super.Ct.Crim.R. 14. Appellant unsuccessfully moved for severance and mistrial before he took the witness stand, during Hair's counsel's cross-examination of appellant, again after a break in the trial, and finally after the closing argument by Hair's counsel.

along side of the road and you opened the passenger door." He also accused appellant of moving Fuqua's body alone through cross-examination which suggested that appellant met with Hair to buy marijuana and borrowed the car from Hair while he was high on the marijuana. While showing the photograph of Fuqua's dead body to the jury, Hair's counsel stated that appellant was "in a hurry. You pulled over to the side of the road ... opened the passenger side and you grabbed her by her legs and you dragged her in the woods and you left her there and you returned the car to Hair and didn't tell him why you borrowed the car." Hair's counsel also asked appellant if he knew where the knife was that killed Fuqua. During closing argument, Hair's counsel argued that appellant betrayed Hair when appellant claimed not to know where the knife was because it was in Hair's back and repeated the prosecutor's accusation that appellant was interested in self-preservation, in "looking out for number one," and asked the jury to take that knife out of Hair's back.

Clearly Hair's defense and his counsel's efforts to absolve Hair by proving that appellant had acted alone conflicted with appellant's defense denying his involvement in the crimes. Hair did not testify or present a defense at trial but relied on his counsel's posture as a second prosecutor—questions and argument implying that Hair had informed his counsel that appellant had acted alone in moving Fuqua's body. Appellant could not challenge the basis for Hair's counsel's questions and argument, presumably based on information from his client, nor comment on Hair's failure to testify. *Cf. Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 *reh. denied*, 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965). Since appellant's closing argument preceded Hair's closing argument he had no opportunity to respond to Hair's attack. Had appellant's motion for severance been granted the questions posed by Hair's counsel would have been unlikely since the prosecutor would have needed an evidentiary basis for his questions, *Ali v. United States*, 520 A.2d 306, 313 (D.C.1987), and unless Hair testified, no such basis is evident from the record. Moreover, appellant maintained at oral argument that the government's evidence of appellant's complicity in moving Fuqua's body likely had a greater impact on the jury as a result of Hair's counsel's posture as a second prosecutor.

■ Appellant's counsel repeatedly requested a severance or a mistrial, see note 3, *supra*, and specifically objected to Hair's counsel's cross examination and closing argument. The trial judge, moreover, had a continuing responsibility to grant a severance if the requisite degree of prejudice arose as a result of joinder at any time during the trial. *Hordge v. United States*, 545 A.2d 1249, 1257 (D.C.1988) (*citing Evans v. United States*, 392 A.2d 1015, 1024 (D.C.1978)). We find no abuse of discretion because we are satisfied that the conflict between the co-defendants' defenses was not of a magnitude to raise a danger that the jury would convict appellant based on this conflict alone, *Tillman, supra*, 519 A.2d at 170, *Ready, supra*, 445 A.2d at 987; *West v. United States*, 499 A.2d 860, 867–69 (D.C.1985); *see Smith v. United States*, 315 A.2d 163, 166 (D.C.), *cert. denied*, 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974). The government's independent circumstantial evidence against appellant that he raped Fuqua, forcibly removed her to a wooded area near his apartment building and moved her body in Houser's borrowed car was powerful. Appellant's general denial was not contradicted solely or even primarily by Hair's defense, which related only to who moved Fuqua's body. The trial judge also instructed the jury that the arguments of counsel are not evidence.[4]

---

4. *United States v. Sheikh*, 654 F.2d 1057 (5th Cir.1981), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982) and *United States v. Romanello*, 726 F.2d 173 (5th Cir.1984), on which appellant relies, are distinguishable. The *Sheikh* court found that co-defendant's defense, in which he claimed that a crate containing heroin belonged to the defendant, conflicted with the defendant's defense that the same crate belonged to the co-defendant, but not sufficient-

## IV.

We also reject appellant's other claims of reversible error.

■ **A.** *Prosecutorial misconduct.* Appellant claims that during cross-examination the prosecutor improperly suggested that appellant was lying while previous witnesses, whose testimony differed from appellant's, were truthful, and that in closing and rebuttal arguments the prosecutor impermissibly suggested an. adverse inference from appellant's exercise of his constitutional right to confront witnesses, improperly stated his personal opinion of appellant's character, commented on the veracity of witnesses, and made statements which were without evidentiary support.[5]

■ During cross-examination of appellant, over defense objections, the prosecutor repeatedly asked appellant whether he had heard the testimony of prosecution witnesses which contradicted his testimony. We agree that the prosecutor improperly cross-examined appellant by recapitulating the testimony of other witnesses contradictory to appellant's testimony. *Carter v. United States,* 475 A.2d 1118, 1126 (D.C.), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985); *Wright v. United States,* 513 A.2d 804, 811 (D.C.), *cert. denied,* 479 U.S. 933, 107 S.Ct. 406, 93 L.Ed.2d 359 (1986). While the recapitulation in *Carter* culminated in the witness

claiming that the other witnesses had lied or were mistaken, *Carter* condemned the method of cross-examination used by the prosecutor, and not the response of the witness. The error is serious where the strength of the government's case relies heavily on the veracity of witnesses. *See (Phillip) Dyson, supra,* 418 A.2d at 130. Nevertheless, the error was harmless since appellant's responses did not comment on the truthfulness of other witnesses' testimony and the matters about which he was improperly cross-examined, as he concedes, were "seemingly immaterial." *Wright, supra,* 513 A.2d at 811; *(Phillip) Dyson, supra,* 418 A.2d at 132.

■ Similarly, while the prosecutor's statement in rebuttal closing argument impermissibly suggested, as the government concedes, an adverse inference from appellant's exercise of his constitutional right to confront witnesses, *Fornah v. United States,* 460 A.2d 556, 560–61 (D.C.1983); *(Phillip) Dyson, supra,* 418 A.2d at 131, the government contends that the misconduct was not. highly prejudicial and does not rise to plain error warranting reversal. *Hart v. United States,* 538 A.2d 1146, 1149 (D.C.1988); *Jenkins v. United States,* 374 A.2d 581, 584 (D.C.), *cert. denied,* 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977). Many of the comments concerning appellant's personality were irrelevant and better left unsaid as the government agrees,

ly so as to deny him a fair trial and warrant reversal. 654 F.2d at 1064–65. *Romanello* found that the adversarial stance taken by counsel for the co-defendant so prejudiced the defendant under multiple attack as to deny him a fair trial. In *Romanello* the core of co-defendant's evidence directly implicated the defendant, the co-defendant's defense was substantiated by inculpatory evidence that the government had neglected to mention, and co-defendant's counsel depicted defendant as a violent thug who threatened to kill the co-defendant if he testified. 726 F.2d at 179–80. Even applying the Fifth Circuit's fair trial standard, appellant would not prevail since Hair did not introduce any new evidence, his defense related to only one of several incidents implicating appellant in the murder of Fuqua, and Hair's counsel did not depict appellant in a comparably inflammatory manner.

**5.** This court's role in analyzing claims of alleged prosecutorial misconduct is well established.

We first determine whether the prosecutor's actions were improper. *Jones v. United States,* 512 A.2d 253, 257 (D.C.1986); *Hammill v. United States,* 498 A.2d 551, 554 (D.C.1985); *Sherrod v. United States,* 478 A.2d 644, 655 (D.C.1984). If misconduct has occurred, we determine whether "substantial prejudice" resulted based on the gravity of the misconduct, its relationship to the issue of guilt, the effect of any corrective action by ·the trial judge, and the strength of the government's case. *Sherrod, supra,* 478 A.2d at 655 (citing *Villacres v. United States,* 357 A.2d 423, 428 (D.C.1976) and *(Duane) Dyson v. United States,* 450 A.2d 432, 437 (D.C.1982)); *(Phillip) Dyson v. United States,* 418 A.2d 127, 132 (D.C. 1980). In the absence of proper objection at trial, our review is limited to plain error and we will reverse a conviction only where the misconduct jeopardized the very fairness and integrity of the trial. *See Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc).

see *Irby v. United States*, 464 A.2d 136, 140 (D.C.1983) (citing *Tuckson v. United States*, 364 A.2d 138, 142 (D.C.1976)); *(Phillip) Dyson, supra*, 418 A.2d at 130; *Sherrod, supra*, 478 A.2d at 656; *Hyman v. United States*, 342 A.2d 43, 45 (D.C. 1975), but they did not amount to plain error. *(Duane) Dyson, supra*, 450 A.2d at 440; *Sherrod, supra*, 478 A.2d at 657; *Arnold v. United States*, 467 A.2d 136, 138 (D.C.1983) *(per curiam)*.

■ Appellant also claims that the prosecutor repeatedly vouched for the credibility of the government's witnesses and expressed his opinion about the untruthfulness of a defense witness. This court has repeatedly admonished lawyers for expressing personal opinions as to a witness' veracity during arguments to the jury, *see, e.g., Mathis v. United States*, 513 A.2d 1344, 1348 (D.C.1986); *Powell v. United States*, 455 A.2d 405, 408 (D.C.1982), *reh'g denied*, 458 A.2d 412 (D.C.1983); *(Phillip) Dyson, supra*, 418 A.2d at 130, but all of the prosecutor's remarks save one were not improper.[6] The prosecutor's remarks that Harriet Kinchlow and Dorothy Pointer[7] were "truthtelling individual[s]" are very close to the personal expression that this court has condemned. In reference to Dorothy Pointer, however, the comment was a fair response to an attack by defense counsel on her credibility as a witness. *See Christian v. United States*, 394 A.2d 1, 33 n. 86 (D.C.), *cert. denied*, 442 U.S. 994, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *Hinkel, supra* note 6, 544 A.2d at 285–86. But since Harriet Kinchlow's credibility was not expressly attacked by the defense, the

prosecutor's comment that she was a truthtelling individual was improper. *Beynum v. United States*, 480 A.2d 698, 710 (D.C. 1984).

Appellant's claim that the prosecutor made comments that had no evidentiary support are meritless—the comments were proper inferences from the evidence, *Kleinbart v. United States*, 426 A.2d 343, 352 (D.C.1981); *Hyman, supra*, 342 A.2d at 45—except where the prosecutor hypothesized that appellant felt confident after he moved Fuqua's body, *Sherrod, supra*, 478 A.2d at 655; *Morrison v. United States*, 547 A.2d 996 (D.C.1988).

■ Even viewing the errors cumulatively, however, we find no plain error. *Hammill, supra*, 498 A.2d at 554. The improper comments constituted only a small portion of the prosecutor's lengthy argument, *see Donnelly v. De Christoforo*, 416 U.S. 637, 643–646, 94 S.Ct. 1868, 1871–1872, 40 L.Ed.2d 431 (1974), and the closing arguments were immediately followed by the court's instructions that statements of counsel are not evidence and that the jury is the sole judge of credibility. Each instance of misconduct related to only one aspect of a lengthy trial, which involved several incriminating incidents, and the evidence against appellant, albeit circumstantial, was strong.

■ B. *Admission of prior consistent statement and restriction of cross-examination.* Appellant also contends that the trial judge erred in admitting Walk-

---

**6.** The prosecutor's remarks about Paula Humes, a neighbor of appellant who testified about people and events she witnessed on October 25 and the following days, and Samuel Jackson, a friend with whom appellant stayed for several nights following October 25, were appropriate inferences from the evidence that the witnesses had no motive to lie. *See, e.g., Hammill, supra*, 498 A.2d at 557; *Sherrod, supra*, 478 A.2d at 657. The prosecutor's statement about Melvin Walker was a proper response to defense counsel's impeachment of Mr. Walker with prior inconsistent statements to the police and cross-examination which attacked Walker's credibility, *Hinkel v. United States*, 544 A.2d 283, 285–86 (D.C.1988); *Hyman, supra*, 342 A.2d at 45. Similarly, the prosecutor's suggestion that Mr. Giles,

a key defense witness, was not telling the truth was a permissible comment emphasizing contradictory evidence about what Mr. Giles observed and heard on the night that Fuqua was allegedly kidnapped. *Hammill, supra*, 498 A.2d at 557; *Sherrod, supra*, 478 A.2d at 657; *Hinkel, supra*, 544 A.2d at 285; *(Phillip) Dyson, supra*, 418 A.2d at 130.

**7.** Harriet Kinchlow was a friend of appellant who lived in South Carolina and whom appellant asked for money to visit her on October 27, 1983. Dorothy Pointer lived in the apartment below appellant and testified that she saw appellant and Fuqua struggling outside the apartment building on the night of October 25, 1983.

er's [8] prior consistent grand jury testimony and in restricting appellant's cross-examination of Walker to establish that he was undergoing a polygraph test when he gave statements to the police and FBI. The judge permitted the government to rehabilitate Walker by introducing his statements concerning limited events after defense counsel had impeached Walker with prior inconsistent statements to the police on October 27, 1983. On cross-examination defense counsel had tried to suggest that Walker's trial testimony was fabricated; accordingly, the judge did not abuse his discretion in admitting relevant prior consistent statements. *Sweat v. United States*, 540 A.2d 460, 464 (D.C.1988). Walker explained that his October 27 statement to the police contained factual inaccuracies because he was scared by the threat of being prosecuted as an accessory. Appellant's assertion that this threat continued to affect Walker's grand jury testimony, which, significantly, contradicted his October 27 statements and took place several months later after appellant and Hair had been arrested, is insufficient to demonstrate trial court error in determining that Walker had no motive to lie before the grand jury. *Reed v. United States*, 452 A.2d 1173, 1181 n. 8 (D.C.1982), *cert. denied*, 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983); *Williams v. United States*, 483 A.2d 292, 296 (D.C.1984), *cert. denied*, 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985). *See Wheeler v. United States*, 470 A.2d 761, 771 (D.C.1983); *United States v. Sampol*, 204 U.S.App.D.C. 349, 401, 636 F.2d 621, 673–74 (1980).

■ However, on redirect, the prosecutor asked Walker about what he had heard in appellant's bedroom and also referred to statements made while taking a polygraph examination by Walker to the FBI and a police detective. The trial judge ruled that the rehabilitation regarding the bedroom

exceeded its permissible scope, but that the prejudice to appellant was negligible and mitigated by the instructions to the jury on the limited use of prior consistent statements. We agree. *Sweat, supra,* 540 A.2d at 464 n. 3.[9] The judge also ruled that the statements to the FBI agent and Detective Wagner were inadmissible prior statements, but for similar reasons concluded that the admission did not cause substantial prejudice to appellant, especially since Walker did not testify about his specific statements to the FBI. Again, we agree.

■ Appellant's claim that the trial judge abused his discretion in refusing to allow appellant to establish that Walker's statements to the FBI and the police detective were made while he was taking a polygraph test is meritless. Appellant sought to establish this fact to show that the police did not trust Walker to tell the truth. The judge determined that the introduction of even the words "lie detector" would be so prejudicial and inflammatory that it outweighed its probative value. Considering the high risk of prejudice, *see United States v. Skeens,* 161 U.S.App.D.C. 131, 134, 494 F.2d 1050, 1053 (1974), and the minimal probative value, especially since Walker had admitted that he had lied to the police during his October 27 questioning, we find no abuse of discretion.

■ C. *Present physical condition hearsay statement.* Appellant also claims that the trial judge erred in admitting Ms. Bussey's testimony regarding Fuqua's statement that she was feeling pain from her menstrual cramps because the testimony related only to a collateral issue and was offered to attack the credibility of appellant's statement that Fuqua was not menstruating on October 25, 1983.

---

8. Walker shared appellant's apartment and testified about appellant's desire to invite Fuqua over to his apartment, Fuqua's visit to appellant's apartment on October 25, 1983 and sounds coming from appellant's bedroom while Fuqua was inside.

9. Appellant also claims that the prosecutor elicited Walker's grand jury testimony that was in excess of the court's ruling. The trial judge ruled that this did not cause any significant prejudice to appellant and was effectively remedied by the court's limiting instruction. *Sweat, supra,* 540 A.2d at 464 & n. 3. We find no error.

The government concedes that a party may not present extrinsic evidence to impeach a witness on collateral issues, *Durant v. United States*, 551 A.2d 1318, 1326 (D.C.1988); *McClain v. United States*, 460 A.2d 562, 569 (D.C.1983), but argues that the impeachment evidence was not collateral because it supported the government's theory that Fuqua would not have consented to sexual intercourse with appellant while she was having her period. Indeed, appellant agrees that the evidence was important to the prosecutor's theory and, hence, highly prejudicial to him. We find no error by the trial judge; the evidence was not collateral and thus was admissible to impeach appellant's statement.

■ Appellant argues further that the statement of Bussey, Fuqua's neighbor, was not admissible hearsay under any valid exception to the hearsay rule and violated his Sixth Amendment right to confront witnesses against him, while the government contends that the statement was admitted pursuant to a valid exception to the hearsay rule for "then existing bodily conditions." This exception to the hearsay rule, well recognized in other jurisdictions, that statements of a declarant's present bodily conditions and symptoms, including pain and other feelings, are admissible as exceptions to the hearsay rule is recognized in this jurisdiction. *See Guthrie v. United States*, 92 U.S.App.D.C. 361, 365, 207 F.2d 19, 23 (1953). *See also, Gezmu v. United States*, 375 A.2d 520, 522 (D.C.1977); *Commonwealth v. Barnes*, 310 Pa.Super. 480, 482, 456 A.2d 1037, 1038 (1983); *Shover v. Iowa Lutheran Hospital*, 252 Iowa 706, 107 N.W.2d 85 (1961); *Fagan v. Newark*, 78 N.J.Super. 294, 188 A.2d 427 (1963); *see also* WEINSTEIN'S *Evidence*, § 803(a)[01]; McCORMACK, *Evidence*, § 291 (3d ed. 1984); 6 WIGMORE, *Evidence*, §§ 1714–19; FED.R. EVID. 803(3). However, even if admission of Bussey's statement was inadmissible, the error would have been harmless, *Chapman v. California*, 386 U.S. 18, 24, 87

S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), since the government introduced far more probative evidence of the fact that Fuqua was menstruating—Fuqua's underwear and a sanitary napkin recovered from her body, both of which were bloodstained.

■ D. *Rehabilitation with out-of-court statement.* Finally, appellant claims that the trial judge erred in refusing to allow appellant to rehabilitate a key defense witness with her out-of-court statement that she saw Fuqua the day after the prosecution claimed appellant had murdered her. Williams testified on direct examination that she saw Fuqua in a restaurant on October 27, but on cross-examination, Williams said she was not sure of the date. On redirect examination appellant sought to introduce Williams' statement to a police officer that she saw Fuqua on October 27. The trial judge sustained the prosecutor's objection. Defense counsel later sought to call Officer Griffith to elicit that Williams told him she saw Fuqua on October 27, but the judge adhered to his ruling that the statement was inadmissible hearsay.

Appellant claims that the statement was admissible under D.C.Code § 14–102 (1981), which authorizes impeachment of a party's own witness if counsel is surprised by the testimony. But appellant did not seek to impeach Williams; rather he sought to rehabilitate her after she had been impeached by the prosecutor, and this would have been error in the absence of any suggestion of fabrication or a motive to lie. *Reed, supra,* 452 A.2d at 1180; *Williams, supra* 483 A.2d at 196. In addition, the statement was not made to the party or to counsel and was inadmissible to supply the anticipated testimony. *Jefferson v. United States,* 558 A.2d 298, 301 (D.C.1989). *See Scott v. United States,* 412 A.2d 364, 368 (D.C.1980). Williams' co-worker's testimony that she and Williams saw Fuqua on October 27, mitigated any damage from

Williams' testimony. Therefore, the trial judge did not err.

 Accordingly, the conviction is affirmed.[10]

10. Appellant requests that this court review the trial judge's determination that the government's "running resume" of its investigation and the index of witnesses testifying before the grand jury did not contain any *Brady* material. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This court has reviewed material to determine whether Jencks violations occurred only where appellant had unsuccessfully moved in the trial court to compel production of such material. *See Middleton v. United States,* 401 A.2d 109, 114–15, 123 & n. 8 (D.C. 1979); *Reed v. United States,* 403 A.2d 725, 732 n. 9 (D.C.1979). Appellant is not seeking review of such a trial court ruling nor suggesting with any specificity that the trial judge failed to compel production of a document that should have been produced. Accordingly, we decline to review the material.