**Reginald YELVERTON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 89-721.

District of Columbia Court of Appeals.

Argued Feb. 24, 1992.
Decided April 7, 1992.

Mindy A. Daniels, appointed by this court, for appellant.

Frederick W. Yette, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, and Daniel S. Friedman, Asst. U.S. Attys., were on the brief, for appellee.

Before WAGNER and KING, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

A jury convicted appellant Yelverton of second-degree murder while armed, in violation of D.C.Code §§ 22–2403, –3202 (1989 Repl.), and carrying a pistol without a license, in violation of D.C.Code § 22–3204.[1] Yelverton contends that the trial court erred in (1) admitting evidence of prior crimes; (2) failing, *sua sponte*, to give a limiting instruction to the jury regarding the impeachment of a government witness after a claim of surprise; (3) admitting a prior consistent statement of a government witness; and (4) prohibiting appellant from introducing his brother's recanted written confession to the crime. We affirm.

Leonard Scoggins, the murdered man, had been assisting appellant Reginald Yelverton in drug transactions in a particular parking lot. As Yelverton came to trust Scoggins, he reduced his time at the lot and relied on Scoggins to conduct the sales. During the last two weeks of his life, however, Scoggins stopped his routine of going to the parking lot to sell drugs, became frightened and uneasy, and borrowed money. During this time, Yelverton inquired into Scoggins' whereabouts and claimed Scoggins owed him some money. Despite his fears, Scoggins met Yelverton and Yelverton's brother in the parking lot. After some words about money, Yelverton shot

and killed Scoggins in view of several witnesses.

■ First, appellant complains that the trial court improperly admitted "other crimes"[2] evidence in the form of testimony that the victim owed him money from drug transactions. We find this claim to be without merit. Evidence of other crimes is admissible when relevant and probative to certain issues including "motive" and "identity" so long as the trial court, in its discretion, determines that "such evidence is not being offered to demonstrate a defendant's criminal disposition and its probative value can outweigh its prejudicial effect." *Jones v. United States*, 477 A.2d 231, 237 (D.C.1984) (citing *Drew, supra* note 2, 118 U.S.App.D.C. at 16, 331 F.2d at 90). This court will reverse only where the court, in its determination, has abused its discretion. *Id.*

In ruling on the admissibility of the testimony that the victim owed appellant money from drug sales, the trial court in the instant case stated:

> if the jury chooses to accept the evidence ... it is highly probative.... [D]ebts of this kind are not unusual ... [and] can cause some violent action. There is prejudicial impact ... by criminal conduct alleged to involve the selling of drugs.... I have to conclude ... that its probity is great enough that it outweighs the prejudice, especially where we're talking about the motive and the identity of the individual who's charged as the perpetrator, its probity seems to be quite direct.... I will ... give insulating instructions to the jury.

We conclude that the evidence in question was introduced for a legitimate purpose, namely to show that appellant possessed a motive for committing the murder. *See Bigelow v. United States*, 498 A.2d 210, 213 (D.C.1985). The trial judge found that the evidence is more probative toward establishing a motive for the murder than

---

1. The trial court sentenced Yelverton to a term of fifteen years to life imprisonment, with a five-year mandatory term for the second-degree murder conviction and to a term of one to three years for the weapon violation.

2. *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

prejudicial to appellant. This "balancing process is committed to the discretion of the trial court and this court may reverse only if that discretion has been abused." From the testimony that Yelverton relied on Scoggins to sell drugs for him, that Scoggins was anxiously avoiding Yelverton, and that Scoggins owed him money, a jury could infer a motive for murder, *i.e.*, that Scoggins had breached Yelverton's trust and appellant sought revenge. We conclude, therefore, that the trial court did not abuse its discretion in admitting the evidence. *Id.*

Second, appellant claims that the trial court erred in failing, *sua sponte*, to give an immediate limiting instruction to the jury regarding the impeachment of a government witness after a claim of surprise. In *Lofty v. United States*, 277 A.2d 99 (D.C.1971), we held it was plain error, in the absence of a manifest waiver, to omit an immediate cautionary instruction whenever evidence is presented which is admissible only for a limited purpose. 277 A.2d at 101. Then, in *Johnson v. United States*, 387 A.2d 1084 (D.C.1978), we severely limited the scope of *Lofty*, but we, nevertheless, reaffirmed "the validity of *Lofty's* narrower holding that a *sua sponte* cautioning instruction is required when a party, surprised by its own witness, impeaches the witness with a prior inconsistent statement in accordance with D.C.Code [ ] § 14–102." *Johnson, supra*, 387 A.2d at 1087 n. 5.[3]

In the instant case, the government was surprised when its witness equivocated as to whether Yelverton was holding a gun after the shooting of Scoggins, so the trial court permitted the government to impeach its witness with his grand jury testimony. Immediately thereafter, the trial court gave the required limiting instruction.[4] In light of this, we conclude that appellant's contention is unwarranted.

Next, appellant argues that the trial court abused its discretion because it permitted a government witness to testify that her son told her that appellant had shot someone in the parking lot on the day in question. Appellant alleges that this testimony was inadmissible hearsay and constituted an inadmissible prior consistent statement.

■ In overruling appellant's objection to the mother's testimony, the trial court considered two theories for which a prior consistent statement would be permitted: (1) the exception to the hearsay rule for prior identification that this jurisdiction adopted in *Clemons v. United States*, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) (en banc), *cert. denied*, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969), and (2) the exception "where there is a charge of recent fabrication." *Sweat v. United States*, 540 A.2d 460, 462 (D.C.1988) (quoting *Reed v. United States*, 452 A.2d 1173, 1180 (D.C. 1982), *cert. denied*, 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983)). The trial judge, however, was not entirely certain that the *Clemons* exception to the hearsay rule applied in this case. According to *Clemons, supra*, 133 U.S.App.D.C. at 39–

---

**3.** In order to "neutralize affirmative harm," (*Jefferson v. United States*, 558 A.2d 298, 301 (D.C. 1989)), a party may impeach its own witness with a prior inconsistent statement under D.C.Code § 14–102 (1989 Repl.) which, in pertinent part, provides:

When the court is satisfied that the party producing a witness has been taken by surprise by the testimony of the witness, it may allow the party to prove, for the purpose only of affecting the credibility of the witness, that the witness has made to the party or to his attorney statements substantially variant from his sworn testimony about material facts in the cause.

**4.** The court cautioned the jury that

The witness has been questioned about previous statements that it is alleged that he made.

Those are what we call prior statements, or out of Court statements.

Now, when a witness is asked about prior statements, if the witness said Yes, I did say that, and it's correct and true, well, then, the prior statement can be part of the evidence in the case. If the witness says either it isn't true, or I didn't say it, then it's not evidence in the case in the sense that it proffers any of the facts in the case. Under those circumstances, it's only used as this: It's there for your consideration in evaluating whether the witness is testifying truthfully and accurately now in the trial. But, if it is denied in either its truthfulness or having been said, it doesn't prove the facts in the case, it's just there for your evaluation.

40, 408 F.2d at 1242–43, a witness whose in-court identification of the defendant is unimpeached may also testify regarding a consistent pretrial identification if he is available to be cross-examined. This exception:

> permits the admission of extrajudicial identification made prior to trial through testimony at trial of either the identifier or third parties present at the prior identification. Such identification testimony is admitted for the purpose of corroborating the witness' in-court identification.

*Morris v. United States*, 398 A.2d 333, 336–37 (1978). That is what happened here: the mother's testimony corroborated her son's in-court identification of appellant.[5] Prior to the trial, her son had made an extrajudicial identification of appellant as the murderer to her, a third party, and he was available for cross-examination. Thus, if the trial court had made it's ruling on this exception alone, we would find no error.

◼ Instead, the trial court permitted the mother's testimony for rehabilitative purposes because, on cross-examination, the witness' veracity was challenged. " 'As a general rule, prior statements consistent with a witness' trial testimony are inadmissible on the theory that mere repetition does not imply veracity,' "[6] but this jurisdiction recognizes an exception to this rule " 'where there is a charge of recent fabrication.' " *Sweat, supra*, 540 A.2d at 462 (quoting *Reed v. United States*, 452 A.2d 1173, 1180 (D.C.1982), *cert. denied*, 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983)). The trial court noted in this case that:

> There certainly was a tenor in the cross examination of the witness that he didn't make a claim that [appellant] did it, until he knew [appellant] was charged. That seemed to me to be a tenor of recent fabrication. That was the implication as I saw it in the cross examination.

We agree. Appellant, during the cross-examination of the witness, implied that only minutes earlier the witness could not identify appellant and that his sudden ability to do so suggested recent fabrication.[7] Thus, we determine that the trial court did not abuse its discretion in permitting the witness' mother to rehabilitate her son's credibility with a prior consistent statement.[8]

◼ Finally, appellant charges that the trial court abused its discretion when it prohibited appellant from introducing an unsworn written confession to the murder given to defense investigators one week before trial by his half-brother, "Half." We also find this claim without merit. During a hearing prior to the testimony of

---

5. In court, the witness hesitated at first to identify appellant as the murderer because he "was scared." We do not view the witness' delayed in-court identification as impeached testimony which would preclude the applicability of this exception.

6. "The rationale for the rule is that a witness' having told the same story on more than one occasion has no bearing on the truth of the statement." *Sweat, supra*, 540 A.2d at 462 n. 1 (quoting *Sherer v. United States*, 470 A.2d 732, 740 (D.C.1983), *cert. denied*, 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984)). "That is, it is based primarily 'on the theory of irrelevancy.' " *Id.* (quoting 3 J. Weinstein & M. Berger, Evidence ¶ 607[08], at 115 (1987)).

7. On cross examination concerning his identification of appellant as the murderer, the witness was assailed with the following questions:
> [Y]ou told them [defense counsel's investigators], first of all, that you didn't know who shot [Scoggins]; didn't you tell them that? ... You know and your mother knows that

you don't know who did the shooting, isn't that right? ... We have your word for that; right? ... The same word that you told the jury about 10 minutes ago when you said you didn't know? ... But now you're not scared?

8. In another instance, the trial court forbade another mother from testifying that her son told her that appellant was Scoggins' assailant. The trial court declared that there was no charge of recent fabrication during this testimony, and acknowledged that this exception to the hearsay rule is "very limited." The trial judge explained that in the first instance, the assertion of recent fabrication "was explicit in the implications and the cross examination of the earlier witness, and that's why I permitted that." The trial court could have allowed the mother's testimony pursuant to the *Clemons* identification exception, but stated, "it [the exception] does not give [the government] an opportunity to parade in here everybody's relative to tell us that Jimmy, who knows, [appellant], told me that [appellant] did it."

Half, appellant informed the trial court that in the event that Half denied on the stand that he shot Scoggins, appellant would claim surprise, under D.C.Code § 14–102,[9] and impeach Half with his written confession. In order to justify impeachment, this court has held that "the party must demonstrate not only surprise, but affirmative damage to its case as well." *Scott v. United States*, 412 A.2d 364, 367–68 (D.C.1980). *See also Jefferson, supra*, 558 A.2d at 301. In determining whether appellant had established a good faith claim of surprise in order to impeach Half with his unsworn written confession, the trial court here considered that, not only had Half subsequently recanted this written confession in an affidavit filed with the trial court, he had also testified twice before a grand jury and, on each occasion, denied killing Scoggins. The trial court also noted that the written confession was not made under oath, and "everytime (sic) [Half's] under oath, he says he didn't do it." Given these circumstances, the trial court concluded that "[s]hould [Half] take the stand, should he not repudiate his previous *sworn* testimony, [appellant] could not claim surprise." Accordingly, the trial court ruled that appellant would not be permitted to impeach Half with the confession because he had to expect that Half would once again deny, under oath, that he was guilty, which would preclude a valid claim of surprise. We find that the trial court did not abuse its discretion in so ruling.

*So ordered.*